UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | | |
|---|---|---|
| AMY BENZ, | | **DECISION** |
| | Plaintiff, | **and** |
| v. | | **ORDER** |
| | | |
| ANDREW M. SAUL,[1] Commissioner of | | **19-CV-371F** |
|   Social Security, | | (**consent**) |
| | Defendant. | |

_____

APPEARANCES:               LAW OFFICES OF KENNETH R. HILLER, PLLC
                              Attorneys for Plaintiff
                              KENNETH R. HILLER, and
                              JUSTIN M. GOLDSTEIN, of Counsel
                              6000 North Bailey Avenue
                              Suite 1A
                              Amherst, New York  14226

                              JAMES P. KENNEDY, JR.
                              UNITED STATES ATTORNEY
                              Attorney for Defendant
                              Federal Centre
                              138 Delaware Avenue
                              Buffalo, New York  14202
                                     and
                              BLAKELY PRYOR, and
                              DENNIS J. CANNING
                              Special Assistant United States Attorneys, of Counsel
                              Social Security Administration
                              Office of General Counsel
                              601 East 12th Street
                              Room 965
                              Kansas City, Missouri  64106

## <u>JURISDICTION</u>

On April 8, 2020, this matter was assigned to the undersigned before whom the

parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed in

_____

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

accordance with this court's June 29, 2018 Standing Order (Dkt. 14).  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on August 21, 2019 (Dkt. 6), and by Defendant on November 18, 2019 (Dkt. 10).

## BACKGROUND

Plaintiff Amy Benz ("Plaintiff"), brings this action under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed with the Social Security Administration ("SSA"), on June 30, 2015, for Social Security Disability Insurance ("SSDI") under Title II of the Act ("disability benefits").  Plaintiff alleges she became disabled on May 22, 2015, based on clinical depression, asthma, bilateral knee surgeries, and subluxation (misalignment of the vertebrae) in her back. AR[2] at 221, 265, 268.  Plaintiff's application initially was denied on September 21, 2015, AR at 126-37, 151-62 and at Plaintiff's timely request, AR at 163-79, on July 14, 2017, a hearing was held in Buffalo, New York via teleconference before administrative law judge William M. Manico ("the ALJ"), in Falls Church, Virginia.  AR at 92-125 ("administrative hearing").  Appearing and testifying at the administrative hearing were Plaintiff, represented by Thomas Klint, Esq. ("Klint"), and vocational expert Sandra Steele ("the VE").

On August 25, 2017, the ALJ issued a decision denying Plaintiff's claim, AR at 69-91 ("ALJ's Decision"), which Plaintiff timely appealed to the Appeals Council.  AR at 219-20.  On January 11 and 18, 2018, and on September 25, 2018, Plaintiff submitted

---

[2] References to "AR" are to the page of the Administrative Record electronically filed by Defendant on June 21, 2019 (Dkt. 4).

45 pages of additional medical records, AR at 10-55, which the Appeals Council did not

"exhibit" with Plaintiff's medical records because such records were not timely

submitted, did not show a reasonable probability of changing the outcome of the

decision, or did not relate to the relevant period, and on January 30, 2019, the Appeals

Council denied Plaintiff's request for review, AR at 1-9, rendering the ALJ's Decision the

Commissioner's final decision.  On March 19, 2019, Plaintiff commenced the instant

action seeking review of the ALJ's Decision.

On August 20, 2019, Plaintiff moved for judgment on the pleadings (Dkt. 5),

refiling the motion on August 21, 2019 to correct an electronic court filing error (Dkt. 6),

("Plaintiff's Motion"), and attaching the Memorandum of Law in Support of Plaintiff's

Motion for Judgment on the Administrative Record (Dkt. 6-1) ("Plaintiff's

Memorandum").  On November 19, 2019, Defendant moved for judgment on the

pleadings (Dkt. 10) ("Defendant's Motion"), attaching Commissioner's Brief in Response

Pursuant to Local Civil Rule 5.5 for Social Security Cases (Dkt. 10-1) ("Defendant's

Memorandum").  Filed on January 7, 2020, were Plaintiff's Reply Arguments (Dkt. 13)

("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is

GRANTED.


## **FACTS**[3]

Plaintiff Amy Benz ("Plaintiff" or "Benz"), born December 23, 1965, was 49 years

old as of May 22, 2015, her alleged disability onset date ("DOD"), and 51 years old as of

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for
determining the pending motions for judgment on the pleadings.

August 25, 2017, the date of the ALJ's Decision.  AR at 87, 221, 265, 268.  As of the

July 14, 2017 administrative hearing, Plaintiff was married and lived in a house with her

husband and their 11-year old autistic daughter who has seizures and attends school

year-round.  AR at 110, 112, 277-78.  Plaintiff attended high school in special education

classes and graduated, and attended college for two years, but has not completed any

type of specialized job training, trade, or vocational school.  AR at 269.  Plaintiff has a

driver's license, drives, goes out several times a day by herself.  AR at 111, 281.

Plaintiff describes her daily activities as caring for her autistic daughter and the family's

pet cat, preparing meals, housework including cleaning and dusting, vacuuming,

mowing the lawn, and doing laundry, all without help.  AR at 110-12, 278-81.  Plaintiff

exercises two to three times a week, visits with her mother, attends church once a

week, attends sporting events, can perform her personal care without assistance, shops

in stores and on-line, and has no difficulties handling money.  AR at 279-82.  Plaintiff

also practices martial arts twice a week, AR at 282, earning her first black belt in

kickboxing in November 2015, at which time Plaintiff commenced working on her 2nd

degree black belt.  AR at 406, 414, 423, 425-27, 438, 450, 476-78.  Plaintiff describes

herself as getting along with others, although she tends to be quiet around others and

does not socialize much.  AR at 283.

Plaintiff's past relevant work experience includes 14 years as a respiratory

technician.  AR at 106-07.  Plaintiff testified she quit her last job after being bullied and

harassed for three years by her manager.  AR at 113.  According to Plaintiff. the job

situation caused her anxiety and depression for which she takes medications, the side

effects of which are fatigue that renders her unable to work.  AR at 105, 112-13.  In

response to the ALJ's questioning, Plaintiff testified that she would be able to resume

work as a respiratory therapist provided she was not working for a supervisor who

harassed and bullied her, but maintains that it was unlikely she could find another such

a job because she is not registered as a respiratory therapist, but only certified.  AR at

114-15.  Because of the uncertainty whether Plaintiff could return to work as a

respiratory therapist, the ALJ posed hypotheticals to the VE who identified three other

jobs Plaintiff could perform.  AR at 121-23.

In connection with her alleged impairments, Plaintiff treated with psychologist

Ilene Donofrio, Ph.D. ("Dr. Donofrio"), AR at 331-52, pulmonologist Iqbal Samad, M.D.

("Dr. Samad"), AR at 353-60, 373, psychiatrist Wendy L. Weinstein, M.D. ("Dr.

Weinstein"), AR at 11-15, 17-20, 475-81, and psychologist Paula Janicki, Ph.D. ("Dr.

Janicki"), AR at 25-44.  In connection with her disability benefits application, on August

25, 2015, Plaintiff underwent a consultative psychiatric evaluation by psychologist

Janine Ippolito, Psy.D. ("Dr. Ippolito"), AR at 362-66, and a consultative internal

medicine examination by Donna Miller, D.O. ("Dr. Miller").  AR at 368-372.

## **DISCUSSION**

### 1.    **Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability

benefits when she is unable "to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§

416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's

determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence.  *Id.*  "Congress has instructed . . . that the factual findings of the Secretary,[4] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## 2.    Disability Determination

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits.  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v.*

---

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

*Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.

1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).
The burden of proof is on the applicant for the first four steps, with the Commissioner
bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and
416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  All five steps need
not be addressed because if the claimant fails to meet the criteria at either of the first
two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if
the claimant meets the criteria for the third or fourth step, the inquiry ceases with the
claimant eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

In the instant case, the ALJ found Plaintiff met the insured status requirement for
SSDI through December 31, 2019, AR at 74, has not engaged in substantial gainful
activity ("SGA") since May 22, 2015, her alleged disability onset date, *id.*, and suffers
from the severe impairments of asthmatic bronchitis, and knee pain, status post
surgeries, AR at 74-75, and medically determinable impairments of hypertension, ear
tube implantation, anxiety and depression, which do not cause more than a minimal
limitation of Plaintiff's ability to perform basic mental work activities and are therefore
non-severe,[5] and that no medical evidence supports Plaintiff's chronic low back pain
which is not medically determined and thus does not constitute an impairment, AR at
74-78, and that Plaintiff does not have an impairment or combination of impairments
meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part
404, Subpart P, Appendix 1.  *Id.* at 78.  Despite her impairments, the ALJ found Plaintiff
retains the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b), except
that Plaintiff may only occasionally kneel, crouch, or crawl, and should not engage in

---

[5] "An impairment is not severe if it does not significantly limit [a claimant's] physical or mental abilities to do basic work activities."  20 C.F.R. § 404.1521(a) (bracketed text added).

repetitive kneeling, crouching, or crawling, may only frequently twist or stoop, and should avoid concentrated exposure to extremes of heat, cold, humidity, odors, dusts, gases, fumes, etc. AR at 78-85. Although Plaintiff remains capable of performing her PRW as a respiratory therapist, in light of Plaintiff's hearing testimony that current industry licensing standards rendered Plaintiff unlikely to be able to return to work as a respiratory therapist, the ALJ elicited testimony from the VE that Plaintiff, based on her age, education, and RFC, and in accordance with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the Grids"), could perform other work existing in significant numbers in the national economy including as a cashier, general office worker, and assembler. AR at 85-86. Based on these findings, the ALJ determined Plaintiff is not disabled as defined under the Act. *Id.* at 86.

Plaintiff does not contest the ALJ's findings with regard to the first three steps of the five-step analysis, but argues that at the fourth step, the ALJ erred by rejecting her later submitted records regarding treatment for her anxiety and depression such that the ALJ failed to develop the record as required, Plaintiff's Memorandum at 13-21, the rejection of the new and material evidence was harmful, *id.* at 21-27, and resulted in an RFC determination that is not supported by substantial evidence in the record. *Id.* at 27-30. Defendant argues the ALJ properly assessed Plaintiff's RFC for a limited range of light work, Defendant's Memorandum at 16-23, and the ALJ's determination of Plaintiff's RFC is supported by substantial evidence in the record, even with consideration of the new evidence which was untimely submitted in violation of the so-called "five-day rule." *Id.* at 23-30. In reply, Plaintiff characterizes Defendant's argument regarding the newly submitted evidence as mere "boilerplate," Plaintiff's Reply

at 2-8, and the ALJ failed to identify evidence supporting the physical RFC determination. *Id.* at 8-9. Plaintiff's arguments are without merit.

With regard to the Appeals Council's decision to not "exhibit" the newly submitted medical records, such records pertain to Plaintiff's psychiatric impairments and include nine pages of treatment notes from Dr. Weinstein and 36 pages of treatment notes from Dr. Janicki. AR at 10-58. Defendant maintains that because the records were submitted on January 11, 2018, January 18, 2018, and September 25, 2018, *i.e.*, between five and 13 months after the August 25, 2017 ALJ's Decision was issued, they were not submitted at least five days before the administrative hearing as required by the regulations, nor has Plaintiff demonstrated that she was excused from complying with the so-called "five-day rule." Defendant's Memorandum at 23-27. In particular, the regulations provide that disability benefits claimants "must make every effort to ensure that the administrative law judge receives all of the evidence and must inform us about or submit any written evidence ... no later than 5 business days before the start of the scheduled hearing," 20 C.F.R. § 404.935(a) ("§ 404.935(a)"), and the failure to comply with this requirement may result in the ALJ declining to consider such evidence unless one of several exceptions is met. *Id.* Plaintiff admits she did not timely provide the records and does not argue her non-compliance is within any of the exceptions listed in § 404.935(b), but instead argues in further support of her motion that the ALJ has a duty to attempt to obtain the missing records prior to the hearing, adding the ALJ was on notice of such records by the fact Plaintiff completed the SSA's Claimant's Recent Medical Treatment form on June 20, 2017, listing the names of such treatment providers, along with contact information for each and recent and upcoming

appointments.  AR at 2-4 (citing AR at 319-20).  Because the Recent Medical Treatment form identifies the treating sources and appointments to which the newly submitted records pertain, Plaintiff maintains that if the ALJ had complied with SSA's Hearings, Appeals, and Litigation Law Manual ("HALLEX") § I-2-5-13.B requiring the ALJ independently make an effort to obtain all relevant records, the ALJ would have located the records prior to the administrative hearing.  *Id.* at 4.

Preliminarily, HALLEX "'is simply a set of internal guidelines for the SSA, not regulations promulgated by the Commissioner, and therefore ... a failure to follow HALLEX does not necessarily constitute legal error.'"  *Johnson v. Berryhill*, 2018 WL 4275985, at *10 (W.D.N.Y. Sept. 7, 2018) (quoting *Gallo v. Colvin*, 2016 WL 7744444, at * 12 (S.D.N.Y. Dec. 23, 2016), *report and recommendation adopted by*, 2017 WL 151635 (S.D.N.Y. Jan. 12, 2017)).  As such, the ALJ's failure to contact each of the treating sources listed on the June 20, 2017 Recent Medical Treatment form was not an error requiring remand.  Plaintiff cites no authority supporting a contrary conclusion, nor has the Second Circuit addressed the issue, yet and cases within the Second Circuit have repeatedly found HALLEX guidelines are not binding on the ALJ.  *See Tomaka v. Comm'r of Soc. Sec.*, 2020 WL 359182, at * 4 (W.D.N.Y. Jan. 21, 2020) (citing cases). Nor did the ALJ otherwise err by failing to independently attempts to obtain the additional records from Dr. Weinstein and Dr. Janicki.  Specifically, an ALJ does not err in failing to develop the record where the claimant's counsel advises she is seeking the missing records, the ALJ keeps the administrative record open to allow for supplementation, but counsel never submits the additional records, and the claimant never requests the ALJ's assistance in obtaining the records. *Jordan v. Comm'r of Soc.*

*Sec.*, 142 Fed.Appx. 542, 543 (2d Cir 2005).  Here, the record establishes that at the commencement of the administrative hearing, the ALJ queried whether the ALJ was in possession of all the medical records relevant to Plaintiff's claim, with Plaintiff's counsel initially assuring the records were complete, AR at 94, but eventually concurred with the ALJ's suggestion that the office treatment notes of Dr. Samad appeared to be missing, and stated he would obtain and submit the records.  AR at 94-102.  The ALJ agreed to hold open the record for two additional weeks to provide Plaintiff time to submit the treatment records from Dr. Samad, AR at 102, 124, but no such additional records were ever submitted.  Not only did Plaintiff's counsel never seek the ALJ's assistance in obtaining any additional records from Dr. Samad, Dr. Weinstein, or Dr. Janicki, which assistance could have included requesting the ALJ exercise his authority pursuant to 20 C.F.R. § 405(d) to subpoena such records, but an ALJ does not err in failing to develop the record where the ALJ keeps the administrative record open to allow for supplementation, but counsel never submits the additional records, and the claimant never requests the ALJ's assistance in obtaining the records.  *Jordan v. Comm'r of Soc. Sec.*, 142 Fed.Appx. 542, 543 (2d Cir 2005).  Accordingly, the ALJ did not err in failing to independently attempt to obtain any medical records, nor in failing to consider the belatedly submitted records, requiring Plaintiff's Motion, on this argument, be DENIED.

Insofar as Plaintiff argues the ALJ's RFC determination is not supported by substantial evidence in the record, Plaintiff's Memorandum at 27-30, Defendant maintains the ALJ properly assessed Plaintiff's RFC for a limited range of light work, Defendant's Memorandum at 16-23, with Plaintiff arguing in reply that the ALJ failed to

identify evidence supporting the physical RFC determination.  Plaintiff's Reply at 8-9.
This argument of Plaintiff is also without merit.

Plaintiff maintains that in assessing Plaintiff's RFC, "the ALJ failed to identify
evidence showing that Plaintiff can stand, walk, sit, lift, carry, push, and pull at the light
exertional level."  Plaintiff's Memorandum at 28.  In cases seeking disability benefits
under the Act, however, it is the Plaintiff's burden to prove she has physical and mental
limitations that restrict her capacity to perform basic work activities to less than the full
range of work at all exertional levels.  *Smith v. Berryhill*, 740 Fed.Appx. 721, 726 (2d
Cir. 2018) (citing 20 C.F.R. § 423(d)(5) (finding ALJ did not arbitrarily substitute his own
judgment for competent medical advice where the plaintiff failed to prove he was
capable of a more restrictive RFC).  Further, the ALJ properly relied on the medical
evidence and opinions in the record, together with Plaintiff's own description of her
physical activities in assessing Plaintiff's RFC as permitting her to perform a limited
range of light work.

In particular, in a Medical Source Statement completed on August 18, 2015, Dr.
Samad reported treating Plaintiff since February 18, 2003, for asthmatic bronchitis and
bilateral knee arthritis.  AR at 353-55.  According to Dr. Samad, despite her physical
impairments, Plaintiff can, consistent with the regulations defining "light work," 20 C.F.R.
§ 404.1567(b), stand or walk for four hours, sit for six hours, does not need to alternate
at will between sitting and standing, can frequently lift and carry 20 lbs., frequently twist,
stoop/bend, crouch/squat, and climb ladders and stairs, and has no limitations to
reaching, handling, or fingering.  AR at 354.  Nevertheless, Dr. Samad also reported
Plaintiff suffers from depression and anxiety, psychological impairments that frequently

interfere with Plaintiff's attention and concentration and render Plaintiff incapable of even low stress work, and would cause Plaintiff to miss up to four days of work per month.  AR at 355.  The ALJ afforded Dr. Samad's opinion limited weight insofar as the evidence as a whole does not support Plaintiff's physical impairments would limit her ability to perform work.  AR at 83.  Specifically, the ALJ points to treatment records showing Plaintiff "is an avid martial artist [kickboxing] who earned a first-degree black belt, and was working on her second-degree black belt," *id.* (citing AR at 405-06, 423, 425) (bracketed material added), which "level of physicality flies in the face of Dr. Samad's restrictions."  *Id.*  The ALJ also considered that Plaintiff's reasons for leaving her job as a respiratory therapist, a job that required her to stand all day, were for non-disability reasons, and nothing in the record indicates Plaintiff, since leaving her job, has experienced any increase in pain.  AR at 84 (citing AR at 107, 113).  The ALJ further observed that Dr. Samad did not treat Plaintiff for her mental impairments other than prescribing Plaintiff Lexapro (antidepressant) for three months.  AR at 84.  This is consistent with Dr. Samad's later medical source statement on November 5, 2015, describing treating Plaintiff for "mild hypertension and asthmatic bronchitis," asserting Plaintiff has not been able to work because of anxiety and depression for which Plaintiff has been undergoing counseling, but that "Plaintiff needs an independent medical evaluation."  AR at 373.

Significantly, the ALJ accorded great weight to the August 25, 2015 opinions of consultative examiner Dr. Miller and consultative psychologist Dr. Ippolito.  In particular, Dr. Miller's examination was largely unremarkable, with Plaintiff showing only some reduced range of motion concerning flexion and extension of her knees, bilaterally, and

diagnosing Plaintiff with asthma, bilateral knee pain status post multiple surgeries,[6] and chronic low back pain, for which her prognosis was stable, and assessed Plaintiff with a mild to moderate limitation with repetitive kneeling and squatting.  AR at 367-71.  Dr. Ippolito's psychiatric consultative examination of Plaintiff was also largely unremarkable, and relied on Plaintiff's self-reported symptoms in diagnosing Plaintiff with major depressive disorder, recurrent, moderate, and unspecified anxiety disorder with panic attacks.  AR at 362-66.  Dr. Ippolito recommended Plaintiff continue with her current psychological and psychiatric treatment and that Plaintiff be referred for vocational training and rehabilitation.  AR at 366.  Dr. Ippolito further assessed Plaintiff's prognosis as fair to good with continued treatment, and found Plaintiff is able to handle her own funds.  *Id.*

The ALJ also gave great weight to the treatment notes of Dr. Donofrio who, despite not providing a medical opinion regarding Plaintiff's ability to work, despite repeatedly diagnosing Plaintiff with depression and anxiety, found Plaintiff with no difficulties performing activities of daily living, or with her memory, concentration, and attention.  AR at 75 (citing AR at 339-40).  Similarly, the ALJ considered the progress notes generated by Dr. Weinstein between February 27, 2017 and May 3, 2017 showing only mild limitations related to Plaintiff's depression and anxiety, yet Plaintiff's mental status examinations were unremarkable.  AR at 76-77 (citing AR at 476-80).

Significantly, despite Dr. Samad's statement that Plaintiff's depression and anxiety render her unable to work, substantial evidence in the record, including the

---

[6] The precise nature and dates of Plaintiff's bilateral knee surgeries is not in the record, but Dr. Ippolito reported Plaintiff as undergoing arthroscopic surgeries on her right knee in 1993, 1994, and 2001, and on her left knee in 2003.  AR at 362.

consultative opinions of Dr. Miller and Dr. Ippolito, the treatment notes of Dr. Donofrio and Dr. Weinstein, Plaintiff's undisputed activities of daily living, and Plaintiff's own statements that she left her physical therapist job not because of any impairment but because she was harassed by her former supervisor, and Plaintiff's testimony at the administrative hearing demonstrated that but for a change in the licensing requirements she remained capable of performing her respiratory therapist job.  *See Cage v. Comm'r of Soc. Sec.*, 692 F.2d 118, 127 (2d Cir. 2012) (reviewing court must "defer to the Commissioner's resolution of conflicting evidence.").  Moreover, under such deferential standard of review applicable to a district court's review of an ALJ's determination of a social security disability claim, substantial evidence in the record may support two contrary rulings.  *See McIntyre v. Colvin*, 758 F.3d 146, 148 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.") (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)), but the consultative physician's report may constitute substantial evidence, *Camille v. Colvin*, 652 Fed.Appx. 25, 28 (2d Cir. 2016) ("[T]he opinion of a treating physician is not binding if it is contradicted by substantial evidence, and the report of a consultative physician may constitute such evidence." (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983)).[7]  Accordingly, in the instant case, based on the record as a whole, the ALJ's RFC determination is supported by substantial evidence in the record, rendering Plaintiff's argument to the contrary without merit.

---

[7] The report of a consultative psychologist also may constitute substantial evidence.  *Petrie v. Astrue*, 412 Fed.Appx. 401, 405-06 (2d Cir. 2011).

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 4) is DENIED; Defendant's Motion

(Dkt. 10) is GRANTED.  The Clerk of Court is directed to close the file.

SO ORDERED.


                                        /s/ *Leslie G. Foschio*
                         _____
                                    LESLIE G. FOSCHIO
                         UNITED STATES MAGISTRATE JUDGE

DATED:       September 30th, 2020
             Buffalo, New York


17